UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
CYNTHIA PIERRE,

                              Plaintiff,

          - against -

CAPITAL ONE FINANCIAL
CORPORATION and RICHARD D.
FAIRBANK, Chairman and Chief Executive
Officer,

                              Defendants.
--------------------------------------------------------x

**MEMORANDUM & ORDER**
21-CV-30 (PKC) (JRC)

PAMELA K. CHEN, United States District Judge:

      Plaintiff Cynthia Pierre brings this action against Defendants Capital One Financial

Corporation ("Capital One") and Richard D. Fairbank, Chairman and Chief Executive Officer of

Capital One.  Plaintiff is a former employee of Capital One who believes she was wrongfully

terminated.  Currently before the Court is Defendants' motion to dismiss Plaintiff's Third

Amended Complaint ("TAC"[1]) pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), as

well as Plaintiff's request for leave to amend.  For the reasons explained below, Defendants'

motion to dismiss is granted, Plaintiff's request for leave to amend is denied, and this case is

dismissed in its entirety.

---

    [1] This case was originally filed in state court and, while the operative complaint is titled the "Third Amended Complaint," as far as the Court can tell, the complaint has been amended only twice, as explained in the below review of the procedural history.

**BACKGROUND**

## I.  Factual Allegations[2]

Plaintiff was employed with Defendant Capital One for seven years—first part-time, then full-time, and eventually as a lead teller and branch ambassador.  (*See* TAC, Dkt. 1-1, ¶ 33.)  On September 19, 2016, Plaintiff's cashbox showed an overage of $15,125.53.[3]  (*Id.* ¶¶ 19–20.) Months later, Plaintiff was told by her bank manager, Ogbonna Obi, that the overage was caused by a systems error.  (*Id.* ¶ 21.)  On December 28, 2018, Plaintiff's cashbox again showed an overage, this time in the sum of $2,021.05.  (*Id.* ¶ 5.)  Plaintiff asked Obi whether "he [had] heard anything regarding [the] difference," whether "the error [was] found," and whether "there [were] any updates on the error."  (*Id.* ¶¶ 24–26.)  Obi "reassure[d] [her] that everything w[ould] be fine." (*Id.* ¶ 27.)  On March 12, 2019, however**,** Obi called Plaintiff into his office and terminated her employment because the $2,021.05 overage "was never located nor figured out," and the error was attributed to Plaintiff.  (*Id.* ¶ 32.)  Plaintiff alleges that other employees and former employees have similarly had overages (as well as shortages) in their cashboxes, but were not terminated.  (*Id.* ¶¶ 34–45.)

## II.  Procedural History

Plaintiff initially filed this case in New York state court on March 12, 2020, against Obi, Defendant Fairbank, and Sharon Andrews.  (Complaint, Dkt. 10-1.)  Plaintiff subsequently filed an Amended Complaint in the state court action, naming only Obi and Andrews as defendants, and

---

[2] The factual allegations are drawn from Plaintiff's TAC and, for the purposes of this motion to dismiss, the Court assumes their truth.  *See Forest Park Pictures v. Universal Television Network, Inc.*, 683 F.3d 424, 429 (2d Cir. 2012).

[3] An "overage" refers to when the cashbox contains more money than the records indicate it should, as opposed to a "shortage," which refers to when the cashbox contains less money than the records indicate it should.  (*See* TAC, Dkt. 1-1, ¶¶ 20, 23.)

listing a single cause of action for wrongful termination.  (First Amended Complaint ("FAC"), Dkt. 10-2.)  On July 13, 2020, Obi and Andrews moved to dismiss, arguing that Plaintiff was an at-will employee, and that New York does not recognize a wrongful termination cause of action for at-will employees.  (Motion to Dismiss, Dkt. 10-4.)  After holding oral argument, the state court granted the motion to dismiss—with leave to replead—in a brief, handwritten order that instructed Plaintiff to name Capital One Bank as the defendant, and to "specify which laws [the Complaint] is based on: city, state[,] or federal, or all, and [to] cite which sentence(s) of the laws she claims were violated."  (Affidavit of Kelly Cardin ("Cardin Aff."), Dkt. 10, at ¶ 6; State Court Order, Dkt. 10-5.)  On December 8, 2020, Plaintiff filed the TAC, which contains substantially similar factual allegations as the FAC (*compare* FAC, Dkt. 10-2, *with* TAC, Dkt. 1-1), but names as defendants Fairbank and, for the first time, Capital One, and lists as the "Cause of Action," "Capital One Bank Code of Business Conduct and Ethics Policy Sections 1.1, 1.2, 1.3, [and] 2.1," as well as "CPLR Sections 1001(a), [and] 1501" (TAC, Dkt. 1-1, ¶ 58).[4]  Plaintiff attached to the TAC Capital One's "Code of Conduct."  (Dkt. 1-1, at ECF[5] 24–57.)  Section 1.1 of that document is titled "Our Code of Conduct" and states:

> At Capital One, we share a proud commitment to upholding the highest standards of professional ethics.  Our Code of Conduct (Code) reflects our core values of Excellence and Do the Right Thing.  Our Code memorializes Capital One's commitment to comply with applicable laws and regulations governing our operations, and to earn our reputation for honesty, fair dealing, and integrity every day.  We owe it to one another, our customers, and the communities we serve.

(*Id.* at ECF 29.)

---

[4] N.Y. C.P.L.R. § 1001(a) covers the necessary joinder of parties, and § 1501 covers service and judgments in cases of joint liability.  Neither provides an independent cause of action.

[5] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

Section 1.2, titled "Our People," states:

Our Code applies to all Capital One associates and members of the Company's Board of Directors, and extends to all Capital One subsidiaries. References to "Capital One associates" in this Code cover Board members and associates, including those in our international locations. The conduct of our vendors, suppliers, service providers, and affiliates (Third Parties) is governed by the Third Party Code of Business Conduct and Ethics.

(*Id.*)

Section 1.3, titled "Our Responsibilities," states:

We expect all associates to live our Company's values by doing the right thing. Knowing, understanding, and following applicable laws and regulations are critical to living our values, safeguarding Capital One's reputation, and maintaining our customers' trust. Our Code should be read and understood in conjunction with relevant Capital One policies, standards, and procedures. References in this document to "the Code" and "Company policy" are intended to include all relevant policies, standards, and procedures.

Where applicable laws or regulations differ from our Code, policies, standards, or procedures, or where a line of business, department, office, group or team has specific requirements, we are expected to follow the most restrictive applicable requirement. We must comply with the letter and spirit of the law and our Code, use fact-based and sound judgment, and seek guidance whenever needed. Associates who violate the Code will be subject to legal action and discipline up to and including termination of employment.

(*Id.* at ECF 30.)

Section 2.1, titled "Fairness, Dignity, and Respect," includes sections on diversity and inclusion, harassment and discrimination, and equal employment opportunities. (*Id.* at 35–36.)

In her TAC, Plaintiff alleges that § 1.3's requirement to "comply with the letter and spirit of the law and our Code, use fact-based and sound judgment, and seek guidance whenever needed," was "never utilized to ascertain the facts during the investigation of the $2,021.05" overage, which led to her termination. (Compl., Dkt. 1-1, ¶¶ 50–51.[6]) Plaintiff also alleges that Capital One's

---

[6] The Complaint includes multiple paragraphs numbered 50–53. This citation references the first paragraphs numbered 50–51.

4

"Employees Manual"[7] authorizes termination of employees for unexplained overages and shortages, which Plaintiff asserts is an "unfair-dealing practice." (*Id.* ¶ 54.) Also attached to the TAC is a letter sent to Defendant Fairbank before this case was filed, demanding $500,000 for lost wages and "mental anguish from the wrongful termination AND discrimination." (Dkt. 1-1, at ECF 21.)

After Plaintiff filed the TAC, Capital One removed the case to this Court based on diversity jurisdiction (Dkt. 1), and Plaintiff filed a motion to remand (Dkt. 7), which this Court denied (Dkt. 14).[8] In February 2021, Defendants requested a pre-motion conference to discuss filing a motion to dismiss pursuant to Rule 12(b)(6). (Dkt. 12.[9]) In their request, Defendants noted that Plaintiff was an at-will employee, and that New York does not recognize wrongful termination claims for at-will employees—substantially the same arguments made by Obi and Andrews in their motion to dismiss the First Amended Complaint in state court. (*Id.*; Dkt. 10-4.)

---

[7] Beyond the Code of Conduct, no additional document titled an "Employees Manual" is in the record. Plaintiff may be referring to the Code of Conduct itself. The Code of Conduct contains a section titled "Accurate Recordkeeping and Reporting," which notes that "all Capital One associates are responsible for maintaining accurate and complete accounting and financial records." (*Id.* at ECF 43.) Neither that section nor any other section in the Code of Conduct, however, specifically mentions overages or shortages. As discussed below, Plaintiff has squarely stated that she has never been given any document indicating that she could be terminated only for cause, and thus the potential existence of a separate Employees Manual does not change the Court's reasoning or conclusion on either the motion to dismiss or request for leave to amend.

[8] The motion was styled as an objection to the removal, but the Court construed it as a motion for remand. (01/18/2021 Docket Order.)

[9] By separate letter, Defendant Fairbank joined this request and also sought leave to file a motion to dismiss pursuant to Rule 12(b)(2) for lack of personal jurisdiction. (Dkt. 16.) At the pre-motion conference, the Court informed Defendant Fairbank that, depending on the outcome of the Rule 12(b)(6) motion, the Court might set a briefing schedule on his Rule 12(b)(2) motion at a later date. (03/23/2021 Minute Entry.)

The Court held the requested conference on March 23, 2021. At the conference, the Court explained to Plaintiff that her TAC appeared to allege that Defendants had failed to follow their Code of Conduct, but that violation of Capital One's internal policy alone does not give rise to a cause of action. The Court also informed Plaintiff that if she was an at-will employee, she did not have a cause of action for wrongful termination, but that if she had a written employment contract, or even an informal assurance that she could be fired only for just cause, she might. Plaintiff, however, confirmed that she was an at-will employee, and stated that she did not have a written employment contract and had never been told or received anything indicating that she could be fired only for cause. Plaintiff reiterated that she believed that the sole reason that she was fired was due to the overage, and that she believed that her termination violated Capital One's Code of Conduct. She also explained that she had named Fairbank as a Defendant only because of her belief that he had created Capital One's policies. Explaining to Plaintiff that the Court was attempting to determine if there was any reason to allow Plaintiff to amend her complaint before deciding the motion to dismiss, the Court asked Plaintiff again if she felt that she had alleged all of the facts relevant to her termination, and Plaintiff replied that she had.

At the close of the conference, the Court informed the parties that it would construe Defendants' pre-motion letters as their motion to dismiss, allow Defendants to file an additional letter supplementing their arguments, and then allow Plaintiff to respond. (03/23/2021 Docket Order.) In Defendants' supplemental letter, they argue that New York does not recognize wrongful termination claims, and that a claim based on an alleged violation of Capital One's internal policy is not actionable. (Dkt. 18. at 3–4.) In her response, Plaintiff reasserted her claims under Capital One's Code of Conduct, and also, for the first time, asserted claims under the Fourteenth Amendment of the United States Constitution, arguing that her termination violated both

6

substantive and procedural due process, under a "job as property" theory.  (Dkt. 19 at 3–4.[10])

Defendants submitted a brief reply noting that they are not state actors, and thus neither the Fifth

or Fourteenth Amendments, or the "job as property" doctrine, apply to them.  (Dkt. 20.)

## MOTION TO DISMISS

### I.      Legal Standard

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007)).  A "claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Id.* (citing *Twombly*, 550 U.S. at 556).  The "plausibility standard is not akin to a 'probability

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."

*Id.*

Determining whether a complaint states a plausible claim for relief is "a context-specific

task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.*

at 679.  In addressing the sufficiency of a complaint, courts are required to accept the well-pleaded

factual allegations in the complaint as true, *see Bldg. Indus. Elec. Contractors Ass'n v. City of New

York*, 678 F.3d 184, 187 (2d Cir. 2012), but "need not credit conclusory statements unsupported

by assertions of facts or legal conclusions and characterizations presented as factual allegations,"

*In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 404 (S.D.N.Y. 2001) (citing

*Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see also Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d

---

[10] The response is styled as a motion to strike Defendants' motion to dismiss, but a subsequent letter from Plaintiff explained that the submission was Plaintiff's opposition to the motion to dismiss.  (*See* Dkt. 21.)

Cir. 2013).  Additionally, a court "need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice."  *In re Livent*, 151 F. Supp. 2d at 405–06 (citing *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1095 (2d Cir. 1995)).

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted).  "Nonetheless, a *pro se* complaint must state a plausible claim for relief."  *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020).

## II.    Application

The motion to dismiss must be granted because, even liberally construed, Plaintiff's complaint does not state a plausible claim for relief.  Defendants are correct that "New York . . . does not recognize a cause of action for 'wrongful discharge.'"  *Sandberg v. KPMG Peat Marwick, L.L.P.*, 111 F.3d 331, 335 (2d Cir. 1997) (citing *Murphy v. Am. Home Prod. Corp.*, 448 N.E.2d 86, 89–90 (N.Y. 1983) ("[W]here an employment is for an indefinite term it is presumed to be a hiring at will[,] which may be freely terminated by either party at any time for any reason or even for no reason.")).  Accordingly, an at-will employee has a cause of action stemming from termination only where there was (1) "a constitutionally impermissible purpose," (2) "a statutory proscription," or (3) "an express limitation in the individual contract of employment."  *Lauture v. Int'l Bus. Machines Corp.*, 216 F.3d 258, 262 (2d Cir. 2000) (emphasis removed) (quoting *Murphy*, 448 N.E.2d at 91).

Plaintiff has not plausibly alleged that her termination was the result of a constitutionally impermissible purpose.  On that issue, Defendants are correct that the Fifth and Fourteen

8

Amendments are inapplicable here because Defendants are a private corporation and a private individual, not state actors. *Flagg v. Yonkers Sav. & Loan Ass'n*, 396 F.3d 178, 186 (2d Cir. 2005) ("[A] litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action."); *Mathura v. Council for Hum. Servs. Home Care Servs., Inc.*, 107 F.3d 3 (Table), 1997 WL 62940, at *1 (2d Cir. 1997) ("Purely private employment . . . creates no property interest to which procedural due process protections apply." (brackets omitted) (quoting *Wal-Juice Bar, Inc. v. Elliott*, 899 F.2d 1502, 1507 (6th Cir.1990)); *McClary v. O'Hare*, 786 F.2d 83, 88 (2d Cir. 1986) (explaining that substantive due process protects individuals only against *government* actions).[11]

With respect to statutory proscriptions, the Court is mindful of its obligation to interpret *pro se* submissions "to raise the strongest arguments that they suggest," *Meadows*, 963 F.3d at 243, and that many cases of wrongful termination allege discriminatory discharge in violation of statutes such as 42 U.S.C. § 1981, Title VII, or the New York State or New York City Human Rights laws. In particular, at the pleading stage, a plaintiff can demonstrate circumstances giving rise to an inference of discriminatory discharge by alleging that she fell within a protected group and was treated less favorably than a similarly situated employee who was not a member of that protected group. *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 229 (2d Cir. 2014). Here, however, even considering all of Plaintiff's submissions together, and liberally construing them, Plaintiff has not plausibly alleged that her termination was the result of impermissible discrimination. Her

---

[11] Although Plaintiff did not raise these constitutional claims until her opposition to the motion to dismiss, in the case of a *pro se* litigant, courts may consider new claims—as well as new facts—raised in opposition papers. *Davila v. Lang*, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018) (collecting cases); *see also Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a pro se party in his papers opposing the motion.").

demand letter to Defendant Fairbank did mention "mental anguish from . . . discrimination" (Dkt. 1-1, at ECF 21), but did not allege discrimination based on being a member of a protected class. Her TAC is similarly devoid of such allegations. Presumably, she meant discrimination between herself and other employees who had overages and were not terminated. On that issue, the TAC does allege, with some level of specificity, that other employees who had overages were not terminated. (TAC, Dkt. 1-1, ¶¶ 34–45.) However, she does not allege that any of those employees were not members of a protected class to which she belongs, which might have permitted this Court to find that the TAC gives rise to an inference of discrimination. The Court finds it notable that, when attempting to frame her claims as constitutional violations, Plaintiff made only due process arguments, and not equal protection arguments (which also would have been inapplicable to the private Defendants, *see Flagg*, 396 F.3d at 186). Moreover, at the conference held before this Court, Plaintiff made it clear that she believes what her TAC alleges—that she was terminated exclusively because of the overage, not because of any impermissible discrimination.

Finally, while New York does not recognize a "wrongful termination" claim, violation of an "express limitation in the individual contract of employment" may give rise to a breach of contract claim. *Baron v. Port Auth. of N.Y. and N.J.*, 271 F.3d 81, 85 (2d Cir. 2001); *see also Lauture*, 216 F.3d at 262. The Court notes that, "[w]hile an 'at will' employment relationship is terminable at any time by either the employer or the employee, with or without cause, the relationship indisputably is contractual in nature." *Hartzog v. Reebok Int'l Ltd.*, 77 F. Supp. 2d 478, 479 (S.D.N.Y. 1999) (collecting New York cases). Furthermore, in some circumstances, portions of internal policies may become part of the employment contract itself. *Baron*, 271 F.3d at 85. Defendants are correct that, without more, a violation of an internal company policy does not support a cause of action, unless the violation also contravenes federal, state, or local law.

*Fattoruso v. Hilton Grand Vacations Co., LLC*, 873 F. Supp. 2d 569, 581 (S.D.N.Y. 2012), *aff'd*, 525 F. App'x 26 (2d Cir. 2013).

As discussed above, despite interpreting Plaintiff's submissions to raise their strongest possible arguments, this Court concludes that Plaintiff has not alleged any constitutional or statutory violation.  Liberally construed, however, Plaintiff's references to the Capital One Code of Conduct are an attempt to argue that (1) the Code of Conduct should be incorporated into her contract of employment, (2) the Code of Conduct placed an express limitation on her contract of employment, (3) her termination violated the Code of Conduct, and thus (4) Plaintiff's termination breached her contract of employment.[12]

Even so, Plaintiff's argument falls short because an ancillary document such as a personnel manual can become a part of the employment contract only where it "specif[ies]  the employer's practices with respect to the employment relationship, including the procedures or grounds for termination," and the employee can prove "(1) an express written policy limiting the employer's right of discharge exists, (2) the employer (or one of its authorized representatives) made the employee aware of this policy, and (3) the employee detrimentally relied on the policy in accepting or continuing employment."  *Baron*, 271 F.3d at 85.  "The New York Court of Appeals has admonished that this is a difficult pleading burden, and that routinely issued employee manuals, handbooks and policy statements should not lightly be converted into binding employment agreements."  *Id.* (internal quotation marks, citations, brackets, and emphasis omitted) (collecting New York cases).  Furthermore, generic anti-discrimination policies and manuals "cannot serve as

---

[12] In determining what legal claims a *pro se* litigant has raised, "the court's imagination should be limited only by [the *pro se* litigant's] factual allegations, not by the legal claims set out in [her] pleadings."  *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005).

the basis for a breach of contract claim." *Price v. Cushman & Wakefield, Inc.*, 808 F. Supp. 2d 670, 700 (S.D.N.Y. 2011) (collecting cases).

Here, the Court has not only considered the sections of Capital One's Code of Conduct that Plaintiff relied on—which are outlined and quoted above—but also reviewed the document in its entirety. Although stating that "[a]ssociates who violate the Code will be subject to legal action and discipline up to and including termination of employment" (Dkt. 1-1, at ECF 30), there is nothing in the Code of Conduct that can reasonably be construed as an express policy *limiting* Capital One's right to discharge its employees. Accordingly, Plaintiff has not plausibly alleged a breach of contract claim.

For the reasons explained above, none of Plaintiff's filings, even considered together and liberally construed, state a plausible claim for relief. Accordingly, Defendants' Rule 12(b)(6) motion to dismiss must be granted.[13]

## LEAVE TO AMEND

Under Rule 15(a), "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2); *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014). Nevertheless, "it is within the sound discretion of the district court to grant or deny leave to amend," *Green v. Mattingly*, 585 F.3d 97, 104 (2d Cir. 2009), and leave to amend may be denied for, among other reasons, futility, *Williams v. Citigroup, Inc.*, 659 F.3d 208, 213–14 (2d Cir. 2011) (*per curiam*). Leave to amend is futile where a Plaintiff cannot, in good faith, add allegations that would enable the complaint to survive a motion to dismiss. *See Panther Partners*

---

[13] Given the Court's conclusion, it need not reach Defendant Fairbank's argument that "even assuming that her wrongful termination claim was cognizable[,] . . . Plaintiff has identified no basis pursuant to which individual liability for her termination could attach to Mr. Fairbank." (Dkt. 18, at 3.)

*Inc. v. Ikanos Commc'ns, Inc.*, 347 F. App'x 617, 622 (2d Cir. 2009) (summary order).  Here too,

*pro se* parties are given special solicitude.  *See Ahlers v. Rabinowitz*, 684 F.3d 53, 66 (2d Cir.

2012).  A *pro se* plaintiff should be given leave to amend "at least once[,] when a liberal reading

of the complaint gives any indication that a valid claim might be stated."  *Id.*  However, because

Plaintiff "has suggested no new material she wishes to plead," and "the problem with [the

plaintiff's] causes of action is substantive," "[s]uch a futile request to replead should be denied."

*Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *Edwards v. Black*, 854 F. App'x 382, 386

(2d Cir. 2021) (summary order) (applying *Cuoco* where plaintiff was not represented on appeal).

Here, Plaintiff has already amended her complaint twice.  Between the first and second

amendment, the defendants (albeit different from the present Defendants) moved to dismiss on

substantially identical grounds to those presented here (*Compare* Motion to Dismiss, Dkt. 10-4,

*with* Dkt. 18), and the state court held oral argument and granted Plaintiff leave to amend with

specific instructions on how to attempt to state a claim (Cardin Aff., Dkt. 10, at ¶ 6; State Court

Order, Dkt. 10-5).  Nevertheless, when Plaintiff amended her complaint, she continued to make

nearly identical factual allegations.  (*Compare* FAC, Dkt. 10-2, *with* TAC, Dkt. 1-1.)

In addition, before setting the briefing schedule on the current motion to dismiss, this Court

held a conference with the parties, in part to determine whether Plaintiff should be given leave to

amend before the motion was filed.  At the conference, Plaintiff confirmed on the record that she

was an at-will employee, stated that she had not been told or received anything indicating that she

could be fired only for cause, reaffirmed that she believed that the sole reason she was fired was

because of the overage, and said that she had already alleged all of the facts relevant to her

termination.

Nevertheless, in her opposition to the present motion to dismiss, Plaintiff requests leave to amend, though she does not explain what additional material she would allege in another amended complaint.  (Dkt. 19, at 5.)  The Court finds that amendment would be futile, and thus the request must be denied.  Based on all of the above, it is clear that "the problem with [Plaintiff's] causes of action is substantive," she has no new allegations that she could, in good faith, add to her complaint that would enable it to survive a motion to dismiss, and thus Plaintiff's leave to amend "should be denied."  *Cuoco*, 222 F.3d at 112; *see Edwards*, 854 F. App'x at 386; *Panther Partners*, 347 F. App'x at 622.

## CONCLUSION

For the reasons explained in this Memorandum & Order, Defendants' motion to dismiss is granted, and Plaintiff's request for leave to amend is denied.  Plaintiff's complaint is thus dismissed, with prejudice and without leave to replead, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The Clerk of Court is respectfully directed to enter judgment accordingly and close this case.

SO ORDERED.

/s/ *Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 16, 2022
      Brooklyn, New York

14